FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

AUG 27 2002
2002 AUG 27 PH 4: 46

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FERET MARINE SUPPLY, ET AL.                    CIVIL ACTION NO. 00-3805

*VERSUS*                                                    SECTION: "N"

M/V ENCHANTED CAPRI, *In Rem*                   MAGISTRATE DIVISION: (1)

## MOTION TO COMPEL WINCHESTER NAVIGATION, LTD. AND THE STATE OF UKRAINE TO CONTRIBUTE TO TRANSLATION AND INTERPRETER COSTS, OR IN THE ALTERNATIVE, TO ASSESS TRANSLATION AND INTERPRETER COSTS AND ATTORNEYS FEES RELATIVE TO THE JANUARY 30 2002 MOTION TO COMPEL DISCOVERY

**NOW INTO COURT**, through undersigned counsel, comes the Mannear Group of Crew

Claimants, and pursuant to 28 USC Section 1920 (2) and Rule 37 ( 4) (A) of the Federal Rules of

Civil Procedure moves the Court for an order compelling Winchester Navigation, Ltd. and the State

of Ukraine to pay counsel for the Mannear Group of Crew Claimants the sum of one-thousand one

hundred fifty dollars and fifteen cents ($1, 150.15) in reimbursement for translator and interpreter

services pursuant to Court  Ordered depositions from January 29 - February 1, 2002, or , in the

alternative, for sanctions in the amount of one thousand, one hundred fifty dollars and fifteen cents

($1,150.15) for translator and interpreter services and attorneys fees necessitated by the bringing of

a Rule 37 (2) Motion to Compel Discovery on January 30, 2002, for the following reasons:

**1.**

Winchester Navigation, Ltd. and the State of Ukraine were ordered by this Court to produce representatives in London, England, to be deposed in this case from January 29 - February 2, 2002.

**2.**

Although Winchester Navigation, Ltd. and the State of Ukraine produced multiple witnesses pursuant to court order and tended them for deposition, counsel for these parties and the parties themselves (although apparently fluent in English) insisted on testifying in Russian, all to the end that counsel for the Mannear Group was compelled to engage the services of a Russian translator from London in order that the depositions could go forward.

**3.**

In the course of the deposition documents were required to be translated from Russian into Enlgish, and the questions and answers of the depositions taken had to be interpreted.

**4.**

On Wednesday January 30, 2002 at approximately 6:25 o'clock p.m. London time, counsel for the Mannear Group of Claimants precipitated an expedited Motion to Compel Discovery in connection with the deposition of Mr. Valeriy Myronyuk by telephone with the United States Magistrate Judge, by virtue of the fact that counsel for Winchester Navigation, Ltd. and the State of Ukraine had repeatedly instructed the deponent not to answer properly submitting questions.

**5.**

As the attached Exhibit "A" indicates, the Mannear Group's expedited Motion to Compel Discovery was granted by the Court, and moreover the Court was compelled to supervise the conclusion of the deposition of the witness, the questioning of which required translation and

interpretation of documents.

**6.**

By letter dated August 19, 2002, counsel for the Mannear Group of Claimants circulated to the participants of the deposition an invoice amounting to $3,450.45 which was charged for Russian language interpretation and translation of documents associated with the ourt ordered depositions and the Motion to Compel Discovery, and in the correspondence each participant was requested to contribute $1,150.15 in reimbursement for these services used in the deposition and the Motion.

**7.**

In response, counsel for the Mannear Group of Claimants received a letter, attached Exhibit "C", from counsel for Winchester Navigation, Ltd. and the State of Ukraine which took the position "I do not consider my client responsible for any portion of that bill."

**8.**

Winchester Navigation, Ltd. and the State of Ukraine, in fact, necessitated the entire bill for Russian language translation and interpretation by virtue of the fact that the witnesses were entirely fluent in the English language and demanded to be deposed only through an interpreter and by virtue of the fact that the depositions were ordered by the Court.

**9.**

Not withstanding this necessity, the participants in the depositions were all willing to divide equally in the bill of interpreter and translator as long as Winchester Navigation, Ltd. and the State of Ukraine paid their proportionate share of $1,150.15 of the bill.

**10.**

Alternatively, by virtue of the fact that these parties refused to answer questions found to be

properly submitted to them by counsel for Mannear Group in court ordered depositions, which

refusal was made the subject of a Motion to Compel, the interpreter and translator costs associated

with the Motion, and deposition, along with attorneys fees associated with the Motion are properly

assessed against Winchester Navigation, Ltd. and State of Ukraine pursuant to Rule 37 (4) (A) of

the Federal Rules of Civil Prodecure, 28 USC 1920 (4) and Zapata Gulf Marine Corp. v. Puerto

Rico Maritime Shipping Authority, 133 F. R. D. 481    ( E.D. LA., 1990).


WHEREFORE, premises considered, the Mannear Group of Claimants prays that the Court

enter an order compelling Winchester Navigation, Ltd. and the State of Ukraine to reimburse

counsel for the Mannear Group of Claimants the sum of one-thousand, $1,150.15 either as its

proportionate share of Russian translator and interpreter costs in the court ordered depositions or as

Rule 37 (4) (A) sanctions for Russian translator and interpreter fees and attorneys fees associated

with the January 30, 2002 Motion to Compel brought on for hearing by the Mannear Group of

Claimants.

Respectfully submitted:

Richard J. Dodson, Bar Roll No. 4982
Kenneth H. Hooks, III, Bar Roll No. 25097
C. John Caskey, Bar Roll No. 3891
Law Office of Richard J. Dodson
A Professional Corporation
628 North Boulevard
Baton Rouge, Louisiana 70802
Telephone (225) 344-0633
Counsel for The Mannear Group of Crew Claimants

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**FERET MARINE SUPPLY, ET AL.**                    **CIVIL ACTION NO. 00-3805**

*VERSUS*                                            **SECTION: "N"**

**M/V ENCHANTED CAPRI,** *In Rem*                   **MAGISTRATE DIVISION: (1)**

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL WINCHESTER NAVIGATION, LTD. AND THE STATE OF UKRAINE TO CONTRIBUTE TO TRANSLATION AND INTERPRETER COSTS OR IN THE ALTERNATIVE TO ASSESS TRANSLATION AND INTERPRETER COSTS AND ATTORNEYS FEES RELATIVE TO THE JANUARY 30, 2002 MOTION TO COMPEL DISCOVERY

MAY IT PLEASE THE COURT:

Winchester Navigation, Ltd. and State of Ukraine, both continuing in the difficult persona they have cast themselves pursuant to this litigation, refuse to pay their proportionate share of the translator and interpreter costs associated with the court ordered depositions of themselves in London. To a man, each of the witnesses was quite fluent in the English language, but never theless counsel for these parties demanded that a Russian translator be supplied for the depositions to go forward. Every question and every answer had to be translated by the Russian interpreter who was retained in London to satisfy the demands of these parties. Documents provided by the witnesses had to be translated from Russian into English for questions to be propounded, not withstanding the fact that the very witnesses deposed had authored multiple documents in English themselves.

The Mannear Group of Claimants and Kennedy Funding could have taken the position that

Page -1-

the entire translator and interpreter bill already paid for by the Mannear Group of Claimants in the amount of $3,450.45 should be defrayed by these obstreperous parties. However, the parties being deposed were requested only to contribute one third of the bill. In light of the fact that the depositions were necessitated by court order, and opposed for a lengthy period of time by Winchester Navigation, Ltd. and State of Ukraine, it would be entirely reasonable for the Court to assess the costs of the interpreter and translator to the deponents themselves. However, in any event a reasonable assessment equivalent to $1,150.15 ought be assessed to the two deponents for their recalcitrant refusal to answer questions in the court ordered depositions which questions were ultimately found to be properly propounded pursuant to the Mannear Group of Claimants' Rule 37 Motion to Compel. The Motion necessitated the United States Magistrate Judge refereeing the balance of Mr. Myronyuk's deposition by long distance conference call. In the course of the hearing of the Motion itself, the translator and interpreter's services were required . The Mannear Group of Claimants simply wants these co-parties to reasonably contribute to the cost of the situation they themselves created by demanding an interpreter and translator before they would obey the orders of the court and give the testimony they were compelled to give. However, reasonableness seems beyond the capabilities of these litigants in this litigation. Accordingly, the Mannear Group of Claimants asks that Winchester Navigation, Ltd. and the State of Ukraine be ordered to reimburse to counsel for the Mannear Group of Claimants the sum of 1,150.15 associated with the depositions order by this Court.

Respectfully submitted:

Richard J. Dodson, Bar Roll No. 4982
Kenneth H. Hooks, III, Bar Roll No. 25097
C. John Caskey, Bar Roll No. 3891
Law Office of Richard J. Dodson
A Professional Corporation
628 North Boulevard
Baton Rouge, Louisiana 70802
Telephone (225) 344-0633
Counsel for The Mannear Group of Crew Claimants

Page -3-

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

**FERET MARINE SUPPLY, ET AL.**                    **CIVIL ACTION NO. 00-3805**

*VERSUS*                                           **SECTION: "N"**

**M/V ENCHANTED CAPRI,** *In Rem*                  **MAGISTRATE DIVISION: (1)**

## NOTICE OF MOTION TO COMPEL WINCHESTER NAVIGATION, LTD. AND THE STATE OF UKRAINE TO CONTRIBUTE TO TRANSLATION AND INTERPRETER COSTS, OR IN THE ALTERNATIVE, TO ASSESS TRANSLATION AND INTERPRETER COSTS AND ATTORNEYS FEES RELATIVE TO THE JANUARY 30 2002 MOTION TO COMPEL DISCOVERY

**To:**   Andrew S. deKlerk
Frilot, Partridge, Kohnke & Clements
1100 Poydras Street, Suite 3600
New Orleans, Louisiana 70163

Derek A. Walker
Daniel Tadros
Chaffe, McCall, Phillips, Toler & Sarpy
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163

G. Edward Merritt
Terriberry, Carroll & Yancey
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163

David L. Reisman
Liskow & Lewis
One Shell Square, Suite 5000
701 Poydras Street
New Orleans, Louisiana 70139

Paul M. Brannon
Kemp & Brannon
911 Veterans Boulevard, Suite 202
Metairie, LA  70005

Raymond B. Landry
Mollere, Flanagan & Landry
Post Office Box 247
Metairie, LA  70001

Ira J. Rosenzweig
Smith, Martin
700 Camp Street
New Orleans, Louisiana 70130

Joseph P. Tynan
Montgomery, Barnett, Brown, Read, Hammond & Mintz
3200 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163

David S. Bland
King, LeBlanc & Bland
3800 Bank One Center
201 St. Charles Avenue
New Orleans, LA  70170

Kevin R. Tully
Christovich & Kearney
Pan American Life Center,  Suite 2300
601 Poydras Street
New Orleans, LA  70130-6078

Joseph W. Fritz, Jr.
Board of Commissioners of the  Port of New Orleans
Post Office Box 60046
New Orleans, LA  70130

Edward J. Koehl, Jr.
      and
J. Kelly Duncan
Jones, Walker, Waechter, Poitevent, Carrere & Denegre
201 St. Charles Avenue, 48th Floor
New Orleans, LA  70170

Antonio J. Rodriguez
Fowler,  Rodriguez
201 St. Charles Avenue, 36th Floor
New Orleans, LA  70170

R. Brent Cueria
634 Carondelet Street
New Orleans, LA  70130

Louis R. Koerner, Jr.
1204 Jackson Avenue
New Orleans, LA  70130-5130

Daphne P. McNutt
McGlinchey, Stafford
643 Magazine Street
New Orleans, Louisiana 70130

Mary L. Dumestre
Stone, Pigman, Walther, Wittmann & Hutchinson
546 Carondelet Street
New Orleans, Louisiana 70130

J. Stephen Simms
Greber & Simms
Twenty South Charles Street,   Suite 702
Baltimore, MD  21201

Marguerite K. Kingsmill
House, Kingsmill & Riess
201 St. Charles Avenue, Suite 3300
New Orleans, LA  70170

Michael R. Delesdernier
3632 N. Labarre Road
Metairie, LA  70002

J. Kelly Duncan
Jones Walker, Waechter, Poitevent,
Carrere & Denegre
201 St. Charles Avenue, 48th Floor
New Orleans, Louisiana 70170


G. Beauregard Gelpi
Gelpi, Sullivan & Carroll
400 Poydras St., Suite 2525
New Orleans, Louisiana 70130

    ***Please Take Notice*** that the Mannear Group of Crew Claimants  will bring on for hearing

the attached Motion before the Honorable Sally Shushan at the United States Courthouse, 501

Magazine Street, New Orleans, Louisiana, on the 18th day of September 2002 at nine o'clock am  in

connection with which you are notified to appear and take part such as you deem fit and proper.

Respectfully submitted:

Richard J. Dodson, Bar Roll No. 4982
Kenneth H. Hooks, III, Bar Roll No. 25097
C. John Caskey, Bar Roll No. 3891
Law Office of Richard J. Dodson
A Professional Corporation
628 North Boulevard
Baton Rouge, Louisiana 70802
Telephone (225) 344-0633
**Counsel for The Mannear Group of Crew Claimants**

FERET MARINE SUPPLY, ET AL. VS. M/V ENCHANTED CAPRI, In Rem
**Proces Verbal -- Valeriy Myronyuk**
January 30, 2002



SHEET 1   PAGE 1
1

```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3
    FERET MARINE SUPPLY,   *    CIVIL ACTION
 4  ET AL.                 *    NO. 00-3805
                           *
 5  VERSUS                 *    SECTION: "N"
                           *
 6  M/V ENCHANTED CAPRI,   *    MAGISTRATE
    In Rem                 *    DIVISION: (1)
 7    *   *   *   *   *   *   *

 8

 9          Proces Verbal in the above
    entitled matter of the Government of
10  Ukraine through their designated
    representative, VALERIY MYRONYUK, 38/44
11  Pochanyskya Street, Kiev, Ukraine 04070,
    taken at the offices of Clyde & Company,
12  51 Eastcheap, London EC3M 1 JP, England,
    commencing at 6:25 p.m., on Wednesday,
13  the 30th day of January, 2002.

14

15  APPEARANCES:

16

17  LAW OFFICE OF RICHARD J. DODSON
       (By:  C. John Caskey, Esquire)
18  628 North Boulevard
    Baton Rouge, Louisiana  70802
19     (Attorneys for the Mannear Group
       Interest)
20

21  CHAFFE, McCALL, PHILLIPS, TOLER &
    SARPY
22     (By:  Derek A. Walker, Esquire)
    2300 Energy Centre
23  1100 Poydras Street
    New Orleans, Louisiana  70163
24     (Attorneys for Windchester
       Navigation)
25
```

PAGE 2
2

```
 1  APPEARANCES (continued):

 2
    TERRIBERRY, CARROLL & YANCY
 3     (By:  G. Edward Merritt, Esquire)
    Suite 3100
 4  1100 Poydras Street
    New Orleans, Louisiana  70163
 5     (Attorneys for Kennedy Funding,
       Inc.)
 6

 7
    ALSO PRESENT:
 8

 9  Magistrate Sally Shushan
       (via telephone)
10
    Alexander Merkt
11

12

13

14

15

16

17

18

19
    REPORTED BY:
20

21  KATHY ELLSWORTH SHAW, CCR, RPR
    Certified Court Reporter
22  (No. 049519)
    Curren & Landrieu, Inc.
23  749 Aurora Avenue
    Metairie, Louisiana  70005
24  (504) 833-3330  (800) 833-3355
25
```

PAGE 3
3

```
 1           S T I P U L A T I O N
 2          It is stipulated and agreed by
 3  and among counsel for the parties
 4  hereto that the deposition of the
 5  aforementioned witness is hereby being
 6  taken under the Federal Rules of Civil
 7  Procedure procedure, for all purposes,
 8  in accordance with law;
 9          That the formalities of reading
10  and signing are specifically not waived;
11          That the formalities of filing,
12  sealing, and certification are
13  specifically waived;
14          That all objections, save those
15  as to the form of the question and the
16  responsiveness of the answer, are hereby
17  reserved until such time as this
18  deposition, or any part thereof, may be
19  used or sought to be used in evidence.
20      *      *      *      *
21          KATHY ELLSWORTH SHAW, Certified
22  Court Reporter, State of Louisiana,
23  officiated in administering the oath to
24  the witness.
```

PAGE 4
4

```
 1          KATERINA BURGESS,
 2  the interpreter, after having been
 3  previously duly sworn by the
 4  above-mentioned Certified Court
 5  Reporter, gave interpretation as
 6  follows:
 7      *      *      *      *
 8          VALERIY MYRONYUK,
 9  after having been previously duly sworn
10  through the above-mentioned interpreter,
11  by the above-mentioned Certified Court
12  Reporter, was examined and testified as
13  follows:
14          P R O C E E D I N G S
15  MR. CASKEY:
16          Take this down, Kathy, if you
17  would.
18          We're deposing a
19  representative of the Ukrainian
20  government on a 30(b)(6) deposition
21  who's already filed into the record
22  on behalf of the Ukrainian
23  government, that's made an answer in
24  this case, an affidavit in which he
```

EXHIBIT
tabbies
"A"

FERET MARINE SUPPLY, ET AL. VS. M/V ENCHANTED CAPRI, in Rem

**Proces Verbal -- Valeriy Myronyuk**

January 30, 2002

SHEET 2   PAGE 5

```
                                                     5
1    says that the sale of the vessel
2    prior to the judicial sale of it to
3    Norsung was unauthorized.
4          Now, he has stated that he's
5    had many phone conversations, up to
6    seven conversations with the head of
7    Norsung, Kulbachenko, that he met
8    with him in Fort Lauderdale.  And my
9    question that has been repeatedly
10   interrupted by Derek with long
11   colloquies -- the interpreter's
12   asked Derek to slow down so she can
13   interpret.  He's refused.  He
14   coaches the witness.  I want to know
15   whether Mr. Kulbachenko for Norsung
16   at any time to this representative
17   of the Ukrainian government admitted
18   any wrongdoing.  And I think that
19   that's a proper -- I asked
20   fraudulent.  We went through that.
21   Now I'm asking wrongdoing.  Derek
22   will not let this man answer the
23   basic question which traverses the
24   affidavit he's already filed in
25   court, that somehow Mr. Kulbachenko
```

PAGE 6

```
                                                     6
1    or Norsung did something improper
2    with the transfer of this prior to
3    the judicial sale.  And that's my --
4    And I think I'm entitled to ask that
5    question.
6    THE MAGISTRATE:
7          And summarize for me, again,
8    what the affidavit said.
9    MR. CASKEY:
10         The affidavit, I'll read it to
11   you, Your Honor.
12         All right.  It's his affidavit
13   of May 24, 2001.  He says, "During
14   my meeting with Mr. Kulbachenko
15   while in the presence of Mr.
16   Sidorov, Mr. Merkt, Mr. Andreychuk,
17   Mr. Kulbachenko admitted to the
18   following."  And it goes down here
19   "C, that the transfer of ARKADIYA
20   from Winchester to Norsung was
21   improper and invalid."
22         And "D, that the bill of sale
23   dated December 29th, 1997,
24   purporting to transfer the ownership
25   from Winchester to Norsung was
```

PAGE 7

```
                                                     7
1    invalid, ineffective, and without
2    the knowledge or authority of
3    Winchester."
4          Now, that's the -- Well, let's
5    see.  In No. 13 he admitted that in
6    truth and in fact the vessel was
7    never properly sold, deregistered
8    from the Liberian registry,
9    reregistered in the Bahamian
10   registry, nor mortgaged, and that
11   the vessel belongs and has always
12   belonged to Winchester and the State
13   of Ukraine.
14         Now, Your Honor, my position
15   on behalf of the creditors is those
16   are conclusions of the Ukrainian guy
17   here who says he didn't take a
18   statement of Mr. Kulbachenko, he
19   didn't record the conversation of
20   Mr. Kulbachenko.  And I think that
21   I'm entitled to ask him did Mr.
22   Kulbachenko admit any wrong.  Now,
23   he's saying "I'm standing on my
24   affidavit.  I won't add anything to
25   it."
```

PAGE 8

```
                                                     8
1          And he didn't say anything
2    other than that.  I'm entitled to
3    ask him whether Mr. Kulbachenko ever
4    admitted doing anything wrong with
5    regard to his handling of this
6    vessel.  And that's my argument.
7    THE MAGISTRATE:
8          Okay.
9    MR. WALKER:
10         Judge, Derek Walker.  How are
11   you?
12   THE MAGISTRATE:
13         Good.  Thanks.  How are you?
14   MR. WALKER:
15         Good.  Thanks.
16         I think I understand what John
17   is saying.  The problem is -- it may
18   be due to the late hour or to his
19   heated state -- his questions have
20   been incoherent, at least to me, and
21   where I have interrupted him is
22   where he has gone off and asked more
23   than one question at a time.
24         For instance, he initially
25   asked Mr. Myronyuk whether he had
```

FERET MARINE SUPPLY, ET AL. VS. M/V ENCHANTED CAPRI, in Rem

**Proces Verbal -- Valeriy Myronyuk**

**January 30, 2002**

SHEET 3   PAGE 9

**9**

```
1   attended certain meetings with
2   Mr. Kulbachenko and wanted to know
3   the substance of those meetings.
4   Then he asked him before that was
5   answered, to include phone calls.
6   And I said "John, you previously
7   asked him about meetings, not phone
8   calls. Are you asking him about
9   both?" He said, "Well, now I want
10  to know about anything." That's
11  sort of a minor point on it.
12       Mr. Myronyuk stands on his
13  affidavit. Those are the points
14  that he stated Mr. Kulbachenko told
15  him when they met. And my objection
16  was to John not being guided by
17  what's stated in the affidavit, but
18  rather saying "Did he ever tell you
19  that he had done a fraudulent
20  transfer?"
21       And my objection was that
22  whether or not the transfer was
23  fraudulent was a legal conclusion
24  that the court would determine based
25  on the facts of the affidavit or the
```

PAGE 10

**10**

```
1   testimony. And furthermore, that
2   there was ample evidence of
3   wrongdoing, which was his next
4   question, as set forth in the
5   affidavit, that each of those
6   elements, two of which John read to
7   you, were clearly wrongdoing.
8        Now, whether they amounted to
9   fraud or something else is a legal
10  conclusion. And that's where we
11  are. Mr. Myronyuk is not declining
12  to go answer, nor am I interrupting
13  purposely to filibuster. I'm just
14  saying "John, ask a question which
15  can be answered and is coherent."
16  MR. CASKEY:
17       Judge, I want the translator
18  to tell you -- she's under oath --
19  about repeatedly asking Mr. Walker
20  to stop so she could just translate
21  the objections and the colloquy to
22  the witness.
23  MR. WALKER:
24       Well, I can address that,
25  Judge. Yes, I told the interpreter
```

PAGE 11

**11**

```
1   I would not stop. I wanted to
2   finish my objection and then she
3   could have the entire objection read
4   by the court reporter and she could
5   interpret it. But first I was going
6   to finish my objection.
7   MR. CASKEY:
8        He's totally obstreperous,
9   Your Honor. We've got about a dozen
10  questions in here and we've been
11  going at it for some time.
12  THE MAGISTRATE:
13       Okay. I'll tell you what we
14  can do. We can do a number of
15  different things. If you want to,
16  we can go on the record right now
17  and let Caskey ask his questions and
18  get through the line of questions.
19  If you'd like, I'll be glad to sit
20  in.
21       Caskey, you've got to ask
22  direct questions, let him answer the
23  question. (Inaudible)
24  MR. WALKER:
25       That's perfectly acceptable to
```

PAGE 12

**12**

```
1   me, Judge. I'm not sure if John
2   can ask a --
3   MR. CASKEY:
4        The minute we hang up, we're
5   going to get in a fight again. I've
6   got about ten questions to ask this
7   man. He has to drive to Antwerp, so
8   we've got to stop in 30 minutes,
9   Judge.
10  THE MAGISTRATE:
11       Okay. Well, then go ahead.
12  MR. CASKEY:
13       All right, sir.
14       Back on the record, Kathy.
15       Let the record reflect we're
16  asking questions in the presence of
17  the United States magistrate judge
18  now on the phone.
19  EXAMINATION BY MR. CASKEY:
20  Q.   Now, sir, am I correct that at
21  no time in your communications with
22  Mr. Kulbachenko to the present date has
23  he ever admitted any wrongdoing in his
24  interaction with the M/V ARKADIYA, the
25  ENCHANTED CAPRI, same vessel?
```

SHEET 4   PAGE 13

**13**

1  MR. WALKER:
2  And I object, Your Honor, to
3  the question because Mr. Myronyuk
4  has previously testified along the
5  lines of his affidavit to the
6  various facts that he elicited from
7  Mr. Kulbachenko. And whether or not
8  they are wrongdoing --
9  THE MAGISTRATE:
10  Well, the difference is, Derek,
11  that John is asking whether or not
12  the man ever admitted to wrongdoing,
13  not whether this witness believes
14  there is wrongdoing.
15  MR. WALKER:
16  That's right, Your Honor. And
17  his affidavit states "Mr.
18  Kulbachenko admitted the following:
19  A..., B..., C..., D..., E..."
20  THE MAGISTRATE:
21  Okay. Well, then that's an
22  easy question for him to answer.
23  MR. WALKER:
24  Correct. And he's already
25  done so.

PAGE 14

**14**

1  MR. CASKEY:
2  No, he has not.
3  MR. WALKER:
4  He has too.
5  EXAMINATION BY MR. CASKEY:
6  Q.  Answer my question, sir.
7  A.  I confirm everything which I
8  have stated in my affidavit.
9  Q.  That was not the --
10  A.  And I can repeat it again.
11  Q.  That --
12  Excuse me. The judge is
13  interrupting.
14  THE MAGISTRATE:
15  Tell the witness that he needs
16  to answer the questions directly.
17  That was a question that could be
18  answered with a "yes" or a "no," and
19  if he wants to explain the answer
20  further, he's entitled to do so.
21  THE WITNESS:
22  In which case I want the
23  question to be posed to me very
24  clearly without any deviations. For
25  the last 15 minutes I've been unable

PAGE 15

**15**

1  to understand the question.
2  THE MAGISTRATE:
3  I understood the question.
4  Why don't we ask the court reporter
5  to -- or let me rephrase it. How
6  about that?
7  MR. CASKEY:
8  I'll state it again, Your
9  Honor, for the translation.
10  THE MAGISTRATE:
11  And, John, this time ask the
12  direct question "At any time did the
13  witness admit to wrongdoing."
14  EXAMINATION BY MR. CASKEY:
15  Q.  At any time has Mr.
16  Kulbachenko admitted to wrongdoing to
17  you?
18  A.  Mr. Kulbachenko did not admit
19  to me personally that he personally did
20  a wrongdoing, but -- but he admitted to
21  me that documents that have been
22  arranged for ARKADIYA ship are invalid;
23  that's point one. He admitted that
24  ARKADIYA ship belongs to the State of
25  Ukraine and always did belong to the

PAGE 16

**16**

1  State of Ukraine. He admitted that
2  Norsung is a private company in which he
3  is involved. And there are other
4  admissions, which are noted in my
5  affidavit. This is what we're talking
6  about. Unfortunately, I don't have a
7  very good command of English so I had to
8  clarify things as we went along.
9  Q.  Now --
10  A.  Kulbachenko admitted that
11  everything to do with ARKADIYA are
12  wrongdoings and illegal actions, and all
13  of it was done without any knowledge of
14  Winchester Navigation, which is the
15  owner of ARKADIYA ship.
16  Q.  Isn't it correct, sir, that at
17  no time --
18  MR. CASKEY:
19  Well, Judge, we're just
20  narrating and making a speak again.
21  I object to the responsiveness
22  of the question.
23  EXAMINATION BY MR. CASKEY:
24  Q.  Now, isn't it true, sir --
25  MR. WALKER:

FERET MARINE SUPPLY, ET AL. VS. M/V ENCHANTED CAPRI, In Rem

**Proces Verbal -- Valeriy Myronyuk**

January 30, 2002

SHEET 5   PAGE 17

17

```
 1              Excuse me, Judge.  The witness
 2       hadn't answered Mr. Caskey's
 3       question.  He's still answering it.
 4       MR. CASKEY:
 5              No, he's making a speech,
 6       Judge.
 7       MR. WALKER:
 8              He's going through the list
 9       which you asked him to do.
10              Are you finished?
11       THE MAGISTRATE:
12              Ask your next question.
13       EXAMINATION BY MR. CASKEY:
14       Q.     All right my next question:
15       Isn't it true that at no time have you
16       ever accused Mr. Kulbachenko yourself of
17       any wrongdoing?
18       MR. WALKER:
19              Same objection as before, Your
20       Honor, for the record.
21       THE MAGISTRATE:
22              Okay.  And the witness can
23       answer the question.
24       THE WITNESS:
25              Never, either orally or in
```

PAGE 18

18

```
 1       writing, have I stated that's he is
 2       the direct culprit or that he had
 3       personally forged any documents.
 4       EXAMINATION BY MR. CASKEY:
 5       Q.     Now, have you ever asked Mr.
 6       Kulbachenko who was responsible for the
 7       alleged forgeries?
 8       A.     Yes, I'm sorry.  What -- I
 9       didn't understand what the word
10       "alleged" means.
11       THE MAGISTRATE:
12              Okay.  John, can you rephrase
13       that?
14       MR. CASKEY:              .
15              Yes, I can, Your Honor.
16       EXAMINATION BY MR. CASKEY:
17       Q.     Did you ever ask Mr.
18       Kulbachenko who was responsible for the
19       forgeries?
20       A.     I asked Mr. Kulbachenko who
21       forged these documents.
22       Q.     What did he say?
23       A.     He agreed that the documents
24       are forged and he agreed that the
25       companies which are currently running
```

PAGE 19

19

```
 1       ARKADIYA are run under his management.
 2       But he didn't say -- he didn't admit
 3       that he personally forged the documents
 4       or he personally was responsible for any
 5       wrongdoing.
 6       Q.     When you asked, sir, who was
 7       responsible for the forgery, what did
 8       Mr. Kulbachenko tell you?
 9       A.     He did not answer that
10       question.
11       Q.     Did you ask him again?  Did
12       you press him for the answer?
13       A.     I cannot tell you right now,
14       but I believe I asked this question on a
15       number of occasions.
16       Q.     And is it your testimony that
17       even though you asked that question on a
18       number of occasions, you cannot tell me
19       now what his answer was on even one
20       occasion?
21       MR. WALKER:
22              That's not -- That's a
23       mischaracterization of his
24       testimony.  He said he didn't
25       answer.
```

PAGE 20

20

```
 1       THE MAGISTRATE:
 2              And let's see if he can answer
 3       the question as posed.
 4       THE WITNESS:
 5              Could you please repeat the
 6       question?
 7       EXAMINATION BY MR. CASKEY:
 8       Q.     Yes.
 9              Even though you asked Mr.
10       Kulbachenko on a number of occasions who
11       was responsible for the forgeries, isn't
12       it correct that you can't tell me what
13       his answer was today even on one
14       occasion?
15       MR. WALKER:
16              Same objection.
17       THE WITNESS:
18              I must tell Mr. Caskey that
19       his question has a number of issues,
20       number of statements which I cannot
21       agree with.  If it's a question that
22       he's posing, I can answer his
23       question.  If it's a statement, I
24       cannot approve or disprove it, as
25       far as --
```

FERET MARINE SUPPLY, ET AL. VS. M/V ENCHANTED CAPRI, In Rem

**Proces Verbal -- Valeriy Myronyuk**

January 30, 2002

SHEET 6   PAGE 21

21

1    THE MAGISTRATE:
2         Let's make it a question and
3    have him answer the question.
4    MR. CASKEY:
5         I'll repeat it.
6    THE MAGISTRATE:
7         If it's a question, he can
8    answer it.
9    MR. CASKEY:
10        All right.
11   EXAMINATION BY MR. CASKEY:
12   Q.    Answer the question, sir.
13   A.    I'm sorry.  Could you please
14   repeat it?
15   MR. WALKER:
16        I think the witness is saying,
17   Your Honor, that it was posed in the
18   form of a statement and he can't
19   answer it.
20   THE MAGISTRATE:
21        All right.  Let me ask the
22   question.
23        You asked -- What is the
24   gentleman's name?
25   MR. WALKER:

PAGE 22

22

1         Mr. Kulbachenko.
2    THE MAGISTRATE:
3         -- Mr. Kulbachenko on several
4    occasions whether he knew who
5    committed the forgery.  What was his
6    answer on each of those occasions?
7    THE WITNESS:
8         When I asked him a question
9    about who was responsible for the
10   wrongdoings, I did not get a
11   concrete answer giving me surnames.
12   THE MAGISTRATE:
13        What kind of answer did you
14   get if it was not concrete?
15   THE WITNESS:
16        The answer I was getting was
17   that he agreed with the fact that
18   ARKADIYA M/V belong to the State of
19   Ukraine and not to Norsung company.
20   MR. CASKEY:
21        Well, I don't think that's
22   responsive, Your Honor.
23   THE MAGISTRATE:
24        I agree.
25   MR. WALKER:

PAGE 23

23

1         Apparently, Mr. Kulbachenko
2    wasn't being responsive.  He's
3    giving The Court and the record and
4    Mr. Caskey the answer that Mr.
5    Kulbachenko gave him.
6    THE MAGISTRATE:
7         John, do you want to try it
8    again?
9    MR. CASKEY:
10        I'll try another question,
11   Your Honor.
12   EXAMINATION BY MR. CASKEY:
13   Q.    Did you, sitting here now as a
14   representative of the State of Ukraine,
15   believe that Mr. Kulbachenko directly or
16   indirectly was responsible for forging
17   documents dealing with the M/V ARKADIYA?
18   MR. WALKER:
19        Your Honor, I object to the
20   question for the following reasons:
21   Mr. Myronyuk is a representative of
22   the Ukrainian government appointed
23   by the Ministry of Transport to
24   investigate this matter and he
25   cannot make irresponsible statements

PAGE 24

24

1    on the basis of the fact that there
2    are ongoing investigations and
3    criminal actions being prosecuted in
4    the Ukraine with respect to what
5    happened to this vessel.
6         And I don't know that he can
7    sit here today and answer John's
8    question as flippant as it's being
9    made in this proceeding with
10   whatever repercussions that type of
11   answer may have with respect to
12   what's going on elsewhere.
13   THE MAGISTRATE:
14        Let the translator translate
15   that.
16        (Whereupon the translator
17   complies.)
18   THE MAGISTRATE:
19        Derek, it is my understanding
20   that John is asking for this
21   witness' belief based on his
22   personal conversations with the
23   gentleman.  He's not asking for a
24   legal conclusion.  He's asking for
25   this gentleman's belief, the

SHEET 7  PAGE 25

25

```
1    conclusions that he came to based on
2    his conversation.
3        Is that right, John?
4    MR. CASKEY:
5        Yes, ma'am, it is.
6    MR. WALKER:
7        I understand that, Your HOnor.
8    But that doesn't ameliorate my
9    concern, which is, he's here on
10   behalf of Ukrainian ministry.  He's
11   here in his cabinet position and his
12   appointment by the Ministry of
13   Transportation.  And given the fact
14   of the prosecutor's complaints in
15   the Ukraine involving Mr.
16   Kulbachenko and his various
17   entities, I don't know that he can
18   make --
19   MR. CASKEY:
20       He's testified here --
21   MR. WALKER:
22       Let me finish, John.
23   MR. CASKEY:
24       He's testified there's no
25   complaints against Mr. Kulbachenko
```

PAGE 26

26

```
1    in the -- You're misrepresenting it
2    to The Court.
3    MR. WALKER:
4        Let me finish.  Let me finish.
5    I don't know that he can state
6    in response to John's question as to
7    what his belief is with respect to
8    what a man did who is under
9    investigation.
10   MR. CASKEY:
11       Your Honor, Mr. Walker's
12   client, the country of the State of
13   Ukraine is trying to overturn in the
14   Fifth Circuit and in the district
15   court a $4 million sale, a judicial
16   sale, based on an affidavit signed
17   by this man as the representative of
18   the government of the Ukraine that
19   something was unauthorized in the
20   transfer of the ARKADIYA prior to
21   that judicial sale.  I'm asking him
22   his mental impressions having
23   investigated this matter for the
24   State of the Ukraine.  And I think
25   it's not only discoverable, it's
```

PAGE 27

27

```
1    admissable.
2    THE MAGISTRATE:
3        I don't know about admissable,
4    but it is discoverable.
5        John, ask the question again.
6    EXAMINATION BY MR. CASKEY:
7        Q.  All right.  Do you believe,
8    sir, as a representative of the State of
9    Ukraine --
10   MR. WALKER:
11       That's an official capacity,
12   Your Honor.
13   EXAMINATION BY MR. CASKEY:
14       Q.  -- based on your discussions
15   on the telephone and in person with
16   Mr. Kulbachenko, that Mr. Kulbachenko
17   either directly or indirectly was
18   responsible for the forgery of any
19   documents with regard to the M/V
20   ARKADIYA/ENCHANTED CAPRI?
21   MR. WALKER:
22       Same objection.
23   THE WITNESS:
24       I think indirectly Mr.
25   Kulbachenko was responsible for the
```

PAGE 28

28

```
1    forgery of the documentation for the
2    sale of M/V ARKADIYA.
3    EXAMINATION BY MR. CASKEY:
4        Q.  In what way, sir?
5        A.  Because he did not deny his
6    control of the companies, such companies
7    as Norsung, Multi-Group, International
8    Financial, and others, which are
9    involved in the sale of the ship.  And
10   we also met with him in the offices of
11   the companies in question.
12       Q.  All right.  Is that the basis
13   for your belief that he was indirectly
14   responsible?
15       A.  Not all of it, not all the
16   basis for it, but one of the bases for
17   it.
18       Q.  What are all the other bases
19   for your statement?
20       A.  For the question which I posed
21   to him "How does Norsung own the ship
22   ARKADIYA," Mr. Kulbachenko said that he
23   admits that the company's a private
24   company and it cannot own the state
25   property, which M/V ARKADIYA is.  And
```

*FERET MARINE SUPPLY, ET AL. VS. M/V ENCHANTED CAPRI, in Rem*

**Proces Verbal -- Valeriy Myronyuk**

January 30, 2002

SHEET 8   PAGE 29

**29**

```
 1   also he admitted that the documents for
 2   registering the ship in Liberian and
 3   Bahamian legislatures were done without
 4   the knowledge and participation of
 5   Winchester Navigation company, which he
 6   admitted to be the rightful owner of M/V
 7   ARKADIYA at the time.
 8        Q.   Now, sir, let me ask you this
 9   question.  Isn't it correct that under
10   the charter that was granted by --
11   bareboat charter that was granted by
12   Winchester Navigation on March 27, 1997,
13   that specifically to avoid creditors and
14   the liens against the vessel, that the
15   charterers were granted the absolute
16   authority to change the name of the
17   ownership and the registry and flag of
18   the M/V ARKADIYA?
19        A.   It's a very long question.
20   I'm sorry.
21        MR. CASKEY:
22             All right.
23        MR. WALKER:
24             Before you go on, John --
25        THE WITNESS:
```

PAGE 30

**30**

```
 1             I'm happy to -- happy and
 2   ready and willing to answer it.
 3   Please don't just pose me long
 4   questions which are there to trip me
 5   up.
 6        MR. WALKER:
 7             Before you go on, John, do you
 8   still want the magistrate?  Have you
 9   overcome the problem we have?
10        MR. CASKEY:
11             No, I haven't.  I mean, you've
12   given me seven more minutes before
13   this man drives away to the
14   Netherlands, and I'd like to use the
15   seven minutes with the magistrate
16   judge present.
17        MR. WALKER:
18             All right.  Well, let's not
19   misrepresent.  I didn't give you any
20   amount of time.  We agreed to stop
21   at 7:00.  You want to stop at 10:00,
22   we'll stop at 10:00.  You said
23   people were burned out, and I agreed
24   7:00 was a fine time.  So don't
25   mischaracterize.
```

PAGE 31

**31**

```
 1        MR. CASKEY:
 2             Here is my question.
 3        THE MAGISTRATE:
 4             Make it very simple and
 5   straightforward.
 6   EXAMINATION BY MR. CASKEY:
 7        Q.   All right.  Now, isn't it
 8   correct that the bareboat charter
 9   granted by the State of the Ukraine
10   through Winchester on March 27, 1997
11   states the following -- I'm going to
12   read it.
13        A.   Whom did this bareboat charter
14   give the rights -- I'm sorry -- to whom
15   was the bareboat charter --
16        Q.   I'm going to read it to you.
17   I'm going to read it to you, and I'm
18   going to ask that the Russian translator
19   translate it verbatim into Russian.
20        MR. WALKER:
21             Your Honor, I don't want to be
22   a pain here, but if John's going to
23   read it, the document speaks for
24   itself.  Now, if he's got a question
25   regarding the contents, that's fine.
```

PAGE 32

**32**

```
 1        MR. CASKEY:
 2             I just asked the question and
 3   he couldn't answer it.
 4        THE MAGISTRATE:
 5             John, rather than read it into
 6   the record, why don't you identify
 7   the section for the record --
 8        MR. CASKEY:
 9             Yes, ma'am.  Hello.
10        THE MAGISTRATE:
11             (No response.)
12        MR. WALKER:
13             You said "identify the
14   section," Your Honor.
15        THE MAGISTRATE:
16             Yeah.  For the record,
17   identify the section you're
18   referring to and let the translator
19   read it to the gentleman.
20        MR. CASKEY:
21             All right.  For the record,
22   I'm referring to the bareboat
23   charter that's been marked as
24   Exhibit 8 and introduced in Mr.
25   Merkt's deposition, Paragraph 9 C,
```

**Proces Verbal -- Valeriy Myronyuk**
January 30, 2002

--- SHEET 9   PAGE 33 ---

33

1    appearing on page 10.  And I'd like
2    the translator to read this --
3    translate it and read it into
4    Russian to the witness.
5         (The interpreter complies.)
6    EXAMINATION BY MR. CASKEY:
7         Q.    All right.  Now, you're
8    looking at the charter now, sir, and you
9    can read and write English?
10        A.    I would like to draw the
11   judge's attention, please.  I don't
12   think that any normal person would
13   answer a question which last for five
14   minutes and is not given a chance to
15   digest it.  If you want to find out the
16   truth, please give me a chance to look
17   through it and I'll answer it.
18        THE MAGISTRATE:
19             And he wants to ask you some
20        questions with regard to that
21        provision of the contract.  Take
22        your time and look it over.
23        THE WITNESS:
24             (Witness examines document.)
25        MR. CASKEY:

--- PAGE 34 ---

34

1             Paragraph 9 C only is my
2    question, not the whole charter.
3    MR. WALKER:
4             The witness can look at any
5    part of it that he wishes.
6             (Whereupon Mr. Merkt and the
7    witness converse.)
8    MR. CASKEY:
9             Excuse me.  Mr. Merkt, your
10   deposition's been taken, sir.  And I
11   object to Mr. Merkt discussing with
12   the witness.
13   MR. WALKER:
14             He was translating, not
15   discussing.
16   MR. CASKEY:
17             It's already been officially
18   translated without his employee
19   retranslating it.
20   MR. WALKER:
21             Obviously, he didn't retain
22   five minutes' worth of translation,
23   is what he said.
24   MR. CASKEY:
25             Judge, I'll shortcut this.

--- PAGE 35 ---

35

1    EXAMINATION BY MR. CASKEY:
2         Q.    Is that an accurate copy of
3    the charter granted by Winchester on the
4    M/V ARKADIYA?
5         A.    I must say that I'm the
6    president of the company and for such
7    issues I have directors who are
8    responsible for whether it's valid or
9    not valid.  And I can check with them
10   and double-check with them and then
11   answer you.
12        Q.    You can't --
13        A.    I have -- I can -- I have a
14   thousand people under my management, and
15   I cannot be responsible for all the
16   nuances.
17        Q.    Now, it's not a nuance to say
18   whether that's the charter granted on
19   the vessel or not?
20        A.    I will check it right now with
21   director and if it is so, I'll confirm
22   the it.  All I need is --
23        THE MAGISTRATE:
24             Hold on.
25        THE WITNESS:

--- PAGE 36 ---

36

1             -- three minutes.  I will need
2    to check every list, every sheet.
3    THE MAGISTRATE:
4             I would like the witness to
5        assume that that is the charter
6        party for purposes of these
7        questions and answer Mr. Caskey's
8        question.  And at the end of the
9        session he can confirm that that, in
10       fact, is a true copy of the charter
11       party.
12   EXAMINATION BY MR. CASKEY:
13        Q.    Sir, assume that --
14   MR. WALKER:
15             Your Honor, they've got the
16   original in front of them.  They're
17   going through it right now.  It's a
18   seven-, ten-page document that
19   they're just verifying that each
20   page is identical with the original.
21   THE MAGISTRATE:
22             All right.
23   MR. WALKER:
24             Parenthetically, Your Honor,
25   form and originals are very

Case 2:00-cv-02805-LMA Document 665 Filed 08/27/02 Page 21 of 27
*FERET MARINE SUPPLY, ET AL. VS. M/V ENCHANTED CAPRI, in Rem*

**Proces Verbal -- Valeriy Myronyuk**
January 30, 2002

SHEET 10  PAGE 37

**37**

1  important to my client and these
2  witnesses, in view of the fact that
3  forgeries and copies are an issue in
4  this case.
5  THE MAGISTRATE:
6  I understand.  But let him look
7  at it.  Let's not get into more
8  translation for him.
9  MR. WALKER:
10  No.  That's not being
11  translated.  That was for your
12  benefit.
13  THE MAGISTRATE:
14  Appreciate it.  Thanks.
15  THE WITNESS:
16  The 26 pages that I have
17  glanced through in my opinion
18  correspond with the document that we
19  have in our possession.
20  EXAMINATION BY MR. CASKEY:
21  Q.  All right.  So I'd like to
22  cross-introduce that as Exhibit 1 to
23  this deposition, and ask you, sir, the
24  Ukrainian government through Winchester
25  agreed to paragraph 9 C, did they not?

PAGE 38

**38**

1  A.  I cannot tell you right now.
2  I need to think about it.  Because at
3  the time when I was working, Sea Trident
4  company did not exist.
5  MR. CASKEY:
6  All right.  Well, let me just
7  ask the last series of these
8  questions, Your Honor, and I'll be
9  finished with this witness for the
10  time being.  We've agreed to adjourn
11  his deposition in light of his
12  official functions here.
13  EXAMINATION BY MR. CASKEY:
14  Q.  But my last question, sir,
15  when you spoke to Mr. Kulbachenko on the
16  phone and went to Fort Lauderdale,
17  Florida, and spoke with him twice, isn't
18  it a fact, sir, that Mr. Kulbachenko
19  told you directly that when the nominal
20  ownership of the M/V ARKADIYA was
21  changed in registry, he was doing
22  exactly what was permitted under the
23  bareboat charter?
24  A.  No.  Mr. Kulbachenko did not
25  say that.  We were not talking about any

PAGE 39

**39**

1  kind of nominal ownership.  Moreover, he
2  admitted that everything to do with the
3  change of the ship ownership was done
4  illegally.
5  Q.  And, sir, let me ask you this
6  question.  Isn't it true that explicitly
7  the bareboat charter was entered into by
8  Winchester on behalf of the Ukrainian
9  government to avoid creditors and
10  arrests of the vessel?
11  MR. WALKER:
12  Objection, Your Honor; asked
13  and answered, and the document
14  speaks for itself.
15  THE MAGISTRATE:
16  Subject to the objection the
17  witness should answer the question.
18  THE WITNESS:
19  What does "lien" mean?  What
20  do you mean by the word "lien"?
21  MR. CASKEY:
22  All right.  That's all the
23  questions I have, Your Honor.  We've
24  agreed to suspend the deposition.
25  MR. WALKER:

PAGE 40

**40**

1  Thank you, Your Honor.
2  THE WITNESS:
3  As far as I understand and
4  know --
5  MR. CASKEY:
6  He's answering it now, Your
7  Honor.
8  THE WITNESS:
9  -- the bareboat charter -- if
10  we're talking about the bareboat
11  charter signed between Winchester
12  and Silvercone companies, that was
13  done in '97, 27th of March and
14  allowed for a mechanism of debt
15  repayment and not a mechanism of
16  debt avoidance.
17  MR. CASKEY:
18  Thank you, sir.
19  Judge, thank you very much for
20  having this emergency hearing.
21  THE MAGISTRATE:
22  All right, gentlemen.  Thank
23  you.  You-all have a good trip.
24  MR. WALKER:
25  Thank you, Your Honor.

FERET MARINE SUPPLY, ET AL.  VS.  M/V ENCHANTED CAPRI, In Rem
**Proces Verbal -- Valeriy Myronyuk**
January 30, 2002

SHEET 11  PAGE 41

41

```
 1        MR. CASKEY:
 2             Thank you.
 3             (Whereupon the deposition was
 4        recessed for the day at 7:07 p.m.)
 5             *       *       *       *       *
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

PAGE 42

42

```
 1              REPORTER'S CERTIFICATE
 2        I, Kathy Ellsworth Shaw, CCR, RPR,
 3   Certified Court Reporter, in and for the
 4   State of Louisiana, as the officer
 5   before whom this testimony was taken, do
 6   hereby certify that VALERIY MYRONYUK,
 7   after having been duly sworn by me upon
 8   authority of R.S. 37:2554, did testify
 9   as hereinabove set forth in the
10   foregoing 40 pages; that this testimony
11   was reported by me in stenotype
12   reporting method, was prepared and
13   transcribed by me or under my personal
14   direction and supervision, and is a true
15   and correct transcript to the best of my
16   ability and understanding; that I am not
17   related to counsel or to the parties
18   herein, nor am I otherwise interested in
19   the outcome of this matter.
20
21             KATHY ELLSWORTH SHAW, CCR, RPR
                 Certified Court Reporter
22               (No. 049519)
                 Curren & Landrieu, Inc.
23               749 Aurora Avenue
                 Metairie, Louisiana  70005
24               (504) 833-3330 (800) 487-3367
25
```

CURREN & LANDRIEU, INC.
*Kathy Ellsworth Shaw*
504-833-3330

# DODSON, HOOKS & CASKEY

*A Professional Law Corporation*
5757 Corporate Boulevard, Suite 301
Baton Rouge, Louisiana 70808
Telephone: (225) 344-0633

RICHARD J. DODSON
KENNETH H. HOOKS, III
C. JOHN CASKEY

C. John Caskey's
Facsimile: (225) 336-0330
E-Mail: CjohnCaskey@aol.com
Cell Phone: (225) 938-154

August 19, 2002

Derek A. Walker
Chaffe, McCall, Phillips, Toler & Sarpy
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163 *Via Fax at (504) 585-7075*

G. Edward Merritt
Terriberry, Carroll & Yancey
1100 Poydras Street, Suite 3100
New Orleans, Louisiana 70163  *Via Fax at (504) 524-3257*

Re: ***Freret Marine Supply, et al. M/V Enchanted Capri, In Rem,* Civil Action Number 00-3805, Section "N," Magistrate (1), United States District Court,   Eastern District  of Louisiana**

Dear Derek and Ed:

Enclosed, please find a copy of the invoice for Russian Linguistic Services for the London January 29-February 1, 2002 court ordered depositions.  The total bill was 2,326.99 Pounds Sterling, or US $3,450.45, which we went ahead and paid.  Please forward on to Dodson, Hooks & Caskey your respective checks for US$1,150.15 each so that this matter can be settled, and our leger can so reflect.

Very truly yours,

John Caskey

EXHIBIT

"B"

ation • Translating • Interpreting • Editing • Briefings • Recruitment

1,262.02 —



**RUSSIAN
LINGUISTIC
SERVICES**

Mr. John Caskey
Law Offices of Richard J. Dodson
628 North Boulevard
Baton Rouge
LA
70802
USA

**Date**      12 February 2002
**Reminder**  11 March 2002

**Invoice № 684**

| Description | Amount |
|---|---|
| Court interpreting services , 29 January – 1 February 2002 (case of BLASCO, depositions, offices of Clyde & Co) £350.00 per day plus travel expenses of £20.00 per day | £1480.00 |
| Translation of a 19 page document from Russian into English – 6,274 words @ £135.00 per 1,000 words | £ 846.99 |

**Please make the payment to Russian Linguistic Services**
A/c 68577729 , sort code 60 24-21
NatWest Bank, Wokingham Branch, PO Box 3142
Broad Street, Wokingham, Berks, RG40 1FH
(SWIFT code - NWB KGB 2L)

TERMS OF PAYMENT - UPON RECEIPT, PLEASE
*Thank you for your business!*

| | |
|---|---|
| Sub total | £2,326.99 |
| VAT @ 17.5% | N/a |
| Total | £2,326.99 |

$3450. 45
USD
paid

## Working well with words
www.russianlinguistics.com

22 Primrose Lane, Wonersh, Wokingham, Berkshire RG41 5UR
Tel. 0118 989 0729  Fax: 0118 989 0740  ISDN: 0118 989 0753  Mobile: 07774 103047  E-mail: RLS@russianlinguistics.com
VAT No. 664 6554 91 Registered in England No 4179291

Issuing Office **LA2 2929**                                      Date **04/24/02**

**Baton Rouge, LA 70801**                        Valid for six months from issue date.

| CURRENCY | AMOUNT |
|----------|--------|
| GBP | 2326.99 |

Pay to the order of **Russian Linguistic Services**

The Sum of **Two Thousand Three Hundred Twenty Six and 99/100 British Pound Sterling**\*\*\*\*\*\*\*\*\*\*

Payable at the drawee's buying rate if issued in U.S. Dollars

Drawn On:
**Lloyds Bank PLC]
25 Lavington Street
London SE1 ONE United Kingdom
Account Number: 01080807**

**NON NEGOTIABLE**
Authorized Signature

---

Bank One International Corporation
1717 Main Street
Dallas, Texas 75201
USA

**Customer Receipt**

**528556**

Date **04/24/02**

Customer **Law Offices of Richard J Dodson**

Address **5551 Corporate Blvd Sutie 1-H**

**Baton Rouge, LA 70808**

Telephone **225 336-0330**

Account **7900637076**

#### STATEMENT OF CHARGES

| CURRENCY AMOUNT | GBP2326.99 |
|-----------------|------------|
| RATE | 1.476348 |
| U.S. DOLLAR EQUIVALENT | 3,435.45 |
| COMMISSION | 15.00 |
| TOTAL | 3,450.45 |

---

#### Terms and Conditions of Sale of Foreign Drafts

THE SALE OF THIS DRAFT IS SUBJECT TO THE TERMS AND CONDITIONS SET FORTH ON THE REVERSE SIDE OF THIS RECEIPT.  BY SIGNING THIS RECEIPT AT THE PLACE PROVIDED BELOW, THE UNDERSIGNED AGREES TO SUCH TERMS AND CONDITIONS AND THEIR APPLICABILITY TO THE DRAFT PURCHASED HEREUNDER.

Signed by                                        Date **4-24-02**

WHITE COPY - CUSTOMER'S RECEIPT        YELLOW COPY - INTERNATIONAL PAYMENT SERVICES FILE COPY        PINK COPY - ISSUING OFFICE FILE COPY

N09477 (04/00)

LAW OFFICES

## CHAFFE, McCALL, PHILLIPS, TOLER & SARPY, L.L.P.

2300 ENERGY CENTRE

1100 POYDRAS STREET

NEW ORLEANS, LOUISIANA 70163-2300

(504) 585-7000

FAX (504) 585-7075

www.chaffe.com

202 TWO UNITED PLAZA
8550 UNITED PLAZA BLVD.
BATON ROUGE, LA 70809
(225) 922-4300
FAX (225) 922-4304

EDIFICIO EXA
PISO 10, OFIC PH-10
AVENIDA VENEZUELA ENTRE
CALLES DE ACTINO Y ALAMEDA
EL ROSAL
CARACAS VENEZUELA
(015) (582) 952-2865
FAX (011) (582) 953-0518

ROBERT D DEANE
PETER A. FEKINGA, JR *
J DWIGHT LeBLANC, JR *
CHARLES L CHASSAIGNAC *
G. PHILLIP SHULER, III *
ROBERT D. SLINER, JR.
CONNIE A. MORRISON
WILLIAM F. CRAIG, JR *†
ROBERT S. ROOTH
MARY H. HOLLADAY
MARC G. SHACHAT
DEREK A. WALKER
JONATHAN C. McCALL
KATHLEEN R. PILIE
THOMAS D FORBES
JULIE D LNAUGAIS
JOHN F. OLINDE *

CARMELITE M. BERTAUT
E HOWELL CROSBY
K. ERIC GISLESON
HENRY D. SALASSI, JR
W. ANTHONY TOOPS, III
DOUGLAS L CRUMBAUGH
J. GREGORY WYNN[CA]
CHARLES F. BLANCHARD
ROBERT O. LANDRY, III *
BRETT A. TALBOT
BETTY F. MULLIN
MARY L. MEYER
JAMES C. YOUNG
SCOTT C. BARNEY
DANIEL A. TADROS
D SCOTT LANDRY

'A PROFESSIONAL CORPORATION
†BOARD CERTIFIED TAX ATTORNEY
¶LICENSED IN VENEZUELA ONLY

MERLE F. SHOUGHROE
ANDREW C. PARTEE, JR
L KENNETH KROGSTAD
RONALD L NACUIN
KEITH C. ARMSTRONG
RICHARD D RAMIREZ
PETER J ROTOLO, III
IVAN M RODRIGUEZ

H. EVANS SCOBEE
JOHN C. SAUNDERS, JR.*
CAMPBELL E WALLACE

DAVID SAVAGE
KEITH F ANDREWS
EARL F SUNDMAKER III
GREGORY J WALSH
H. MICHAEL BUSH
JUSTIN D. SCHMIDT
ALEXANDRA M. LAMOTHE
ZENEL A. DOUCET
HEATHER M VALLIANT
DOUGLAS R HOLMES
ANGELA M. HEATH
CAROLINE M BRADY
STEPHANIE C. TOMLINSON
MONIQUE U MORIAL

OF COUNSEL
PAUL A. NALTY
GEORGE W. PIGMAN
ANDREW RINKER, JR
BERNARDO BENTATA
OMAR A. LEON*
SUZANNE HAIK TERRELL

Direct Dial No.: (504) 585-7044
E-mail: walker@chaffe.com

August 20, 2002

TOTAL PAGES SENT:   1

**VIA FACSIMILE: 225-336-0330**
C. John Caskey, Esq.
Law Office of Richard J. Dodson, APC
628 North Blvd.
Baton Rouge LA 70802

Re:     M/V ENCHANTED CAPRI
        Our Ref: 99914/20677

Dear John:

I refer to your fax enclosing copy of the Russian interpreter's bill. I do not consider my client responsible for any portion of that bill. The depositions were noticed by you and/or Ed, and the two of you took the depositions, not me. Under the circumstances, I suggest you two split the bill.

Sincerely,

CHAFFE, McCALL, PHILLIPS,
TOLER & SARPY, L.L.P.

Derek A. Walker

DAW/ett

cc:     **VIA FACSIMILE: 524-3257**
        G. Edward Merritt, Esq.

574271_1 DOC


EXHIBIT
"C"

## Certificate of Service

*I hereby certify* that a copy of the foregoing has been faxed and/or sent to all counsel of record.

Baton Rouge, Louisiana this _____ day of _____,2002.

_____
C. John Caskey